[Civ. No. 13742. Fourth Dist., Div. Two. Oct. 11, 1974.]

SHIRLEY J. DETJEN, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD and
MONTGOMERY WARD & COMPANY, INC., Respondents.

## COUNSEL

Joseph P. Liddy for Petitioner.

Charles Lawrence Swezey, Thomas J. McBirnie, Leonard & Thomas and W. R. Thomas for Respondents.

## OPINION

**KAUFMAN, J.**—Petitioner ("Employee") seeks review of an order granting reconsideration and decision after reconsideration of the Workmen's Compensation Appeals Board ("Board"). We granted the petition for writ of review to examine the action of the Board in light of *Lamb* v. *Workmen's Comp. Appeals Bd.,* 11 Cal.3d 274 [113 Cal.Rptr. 162, 520 P.2d 978]. After mature reflection, we have concluded that the order and decision of the Board must be annulled.

For approximately five years, Employee was employed by Montgomery Ward & Company, Inc. ("Employer") as a chief PBX operator. Employer is permissibly self-insured for workmen's compensation purposes.

Between February 7 and May 22, 1970, as a result of emotional conflicts in her employment and with a particular supervisor, superimposed upon an underlying personality disorder, Employee suffered an industrially caused neurosis. By order of the Board dated June 15, 1971, Employee was awarded temporary disability benefits and medical treatment. After a further hearing on January 19, 1973, a referee's order of February 21, 1973, found Employee still temporarily disabled. Employer petitioned the Board for reconsideration. The petition was granted and in its decision on reconsideration dated March 28, 1973, the Board found that Employee's temporary disability ceased as of November 10, 1972, and that the injury

caused no permanent disability. The Board relied upon the reports of Dr. Braverman, the treating physician chosen by Employee. In his report of November 10, 1972, he stated: "At this time, she has dealt sucessfully with the problems deriving from her industrial difficulty. There are personality problems, as noted in previous reports, which she may prefer to work out on a private basis in psychiatric treatment. She has understood the nature of her psychosomatic ailments and has successfully resolved her complicated relationship, from an emotional point of view, with the Montgomery Ward Company, seeing that relationship in its fundamental-dynamic aspects. Her condition at this time is such that she may enter the labor market, or engage in a rehabilitation program to secure training in another area that would be appropriate for her. There do not appear to be any residual factors of disability traceable to her industrial claim at this time. . . ."

Employee filed a petition for reconsideration of the Board's order and decision of March 28, 1973, which was denied by the Board. Employee did not seek judicial review of the order denying her petition for reconsideration.

Employee continued treatment with Dr. Braverman under the auspices of Medi-Cal. On June 26, 1973, Dr. Braverman reported: "As of this date, June 26, 1973, it is our opinion that Shirley Detjen's psychiatric problems, attributable to the industrial difficulties, have been resolved and that what residual problems remain are attributable to long-standing personality makeup."

On November 13, 1973, petitioner was sent by her attorney to another psychiatrist, Dr. Greenfield. Dr. Greenfield saw Employee on one occasion for approximately one hour and did not have the benefit of any prior medical information.

On January 23, 1974, Employee filed a declaration of readiness to proceed, which the parties stipulated could be treated as a petition to reopen for good cause. (See Lab. Code, § 5803.)

The petition to reopen came on for hearing on February 26, 1974. The primary evidence at the hearing consisted of Employee's testimony, a report from Dr. Greenfield dated January 10, 1974, and a report from Dr. Braverman dated February 22, 1974. Employee testified that, although she was still being treated by Dr. Braverman, who was the physician of her choice, her condition had deteriorated since the last hearing. Dr. Greenfield's report states in part: "Although as states [sic] above, we only have Mrs. Detzen's [sic] story as to what happened with her transfer to Oakland,

certainly something happened and it triggered a violent emotional response in Mrs. Detzen [*sic*] which still is present . . . even to today she still has trouble with hysterical outbursts, insomnia, depression, weakness, tiredness and very poor concentration. It is my feeling that all of these are causally related to the incidents that occurred while working for Montgomery Ward approximately May 1970."

Dr. Greenfield diagnosed Employee's condition as "Depressive reaction," "neurasthenic reaction," and "hysterical conversion reaction," and. it was his opinion that "[a]ll of these are causally related to the work injury of May 1970."

The report of Dr. Braverman dated February 22, 1974, is eight pages in length. In substance, Dr. Braverman reported the reactivation of Employee's symptoms which he attributed to the receipt by Employee of a recent letter relating to the reopening of her workmen's compensation case. The report reads in pertinent part: "Psychiatric treatment is still indicated at this time on a once weekly or once every two week program. However, treatment should be directed exclusively towards the dealing with long term personality problems. The post-traumatic reaction, noted at time of first . . . evaluation (March 1972) has been resolved and but for the extreme suggestibility of Shirley, the symptoms described above would not have occurred, in response to the letter to 'reopen the case' . . . .

"`.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Psychiatric disability is moderate, attributable primarily to the reactivation of symptoms, based on receipt of the letter to 'reopen the case,' as noted above. Shirley at this time as a result of receiving that letter and as a result of reactivation of symptoms is not able to function adequately in the labor market, although she was proceeding definitely in that direction, prior to receipt of the letter. [¶] . . . As noted in previous correspondence from this clinic, Shirley has worked through in effect the post-traumatic effects attributable to the industrial problems. As noted, she had a long standing personality disturbance, marked by hysteric aspects, prior to the industrial difficulty. These hysteric features were also reactivated as a result of industrial problems and were worked through to the point where in therapy we were dealing with the core problems, in her personality, which long preceded the industrial difficulties. One of these core problems is Shirley's extreme suggestibility, sensitivity, and responsiveness to the awakening of early traumas. The Montgomery Ward experience certainly provided such a 'traumatic situation,' which when revived, as a result of her suggestibility, by the receipt of the letter to 'reopen,' has brought about the post-traumatic symptoms which were previously quiescent, and defi-

nitely worked through, in the course of her extensive treatment at this clinic. Therefore, it is my impression that Shirley's difficulties at this time are attributable to her long standing suggestibility. . . ."

Following the hearing on the petition to reopen, the referee awarded Employee lifetime medical benefits together with permanent disability benefits based on a rating of 70 percent (100 percent with 30 percent being apportioned to her preexisting condition). Employer petitioned for reconsideration. The Board granted reconsideration and in its order and decision after reconsideration found that Employee had not established good cause to reopen and ordered that Employee take nothing except for medical-legal costs. The Board's order and decision was based entirely upon the reports of Dr. Braverman, the treating physician, particularly his report of June 26, 1973, stating that Employee's psychiatric problems attributable to the industrial injury had been resolved and that what residual problems remained were attributable to her long-standing personality makeup and that portion of the report of February 22, 1974, quoted above stating that the post-traumatic effects attributable to the industrial problems had been worked through.

■ Employee misstates the issue on review as being whether the referee's findings and award were supported by substantial evidence. The issue is whether the Board's order and decision are supported by substantial evidence in light of the entire record. (Lab. Code, § 5952; *Lamb* v. *Workmen's Comp. Appeals Bd., supra,* 11 Cal.3d at p. 281; *Garza* v. *Workmen's Comp. App. Bd.,* 3 Cal.3d 312, 317 [90 Cal.Rptr. 355, 475 P.2d 451]; *LeVesque* v. *Workmen's Comp. App. Bd.,* 1 Cal.3d 627, 635 [83 Cal.Rptr. 208, 463 P.2d 432].) It is true that "[w]hen a referee's finding of compensable injury is supported by solid, credible evidence, it is to be accorded great weight by the Board and should be rejected only on the basis of contrary evidence of considerable substantiality." (*Lamb* v. *Workmen's Comp. Appeals Bd., supra,* 11 Cal.3d at p. 281.)

■ Good cause to reopen is established by a showing that there is new and further disability (see Lab. Code, § 5410) or if it is shown that disability has recurred or is increased (Lab. Code, § 5803). (See Cal. Workmen's Compensation Practice (Cont. Ed. Bar 1973) § 12.4 et seq., p. 404 et seq.) There can be no question but that Employee's temporary disability has recurred, even if we look exclusively to Dr. Braverman's reports. In his report of November 10, 1972, relied upon by the Board in terminating temporary disability benefits, Dr. Braverman stated: "Her condition at this time is such that *she may enter the labor market* . . . ." (Italics supplied.) In his report of February 22, 1974, Dr. Braverman stated: "Shirley at this

time as a result of receiving that letter and as a result of reactivation of symptoms *is not able to function adequately in the labor market . . . ."* (Italics supplied.)

The question is whether the recurrence of disability was industrially caused or was caused solely by employee's underlying personality disorder. Dr. Braverman's conclusion in his report of February 22, 1974, that "Shirley's difficulties at this time are attributable to her long-standing suggestibility . . ." is not dispositive of the case. In the first place it is well established that industry takes the employee as it finds him. (*Lamb* v. *Workmen's Comp. Appeals Bd., supra,* 11 Cal.3d at p. 282 and cases there cited.) Secondly, Dr. Braverman's report of February 22, 1974, is replete with Dr. Braverman's statements that Employee's symptoms were reactivated as a result of receiving a letter relating to the reopening of her workmen's compensation claim. The precise question we confront, therefore, is whether the recurrence of temporary disability from a neurosis precipitated by reopening of a workmen's compensation claim is compensable. We hold it is.

A somewhat analogous problem is presented by cases in which an employee's disability is enhanced by negligent or ill-advised medical treatment. It is held that the enhanced disability is compensable. (*Fitzpatrick* v. *Fidelity & Casualty Co.,* 7 Cal.2d 230, 233-234 [60 P.2d 276]; *Nelson* v. *Associated Indemnity Corp.,* 19 Cal.App.2d 564, 566 [66 P.2d 184].) Just as an injured employee may be expected to seek medical treatment for his injury, he may be expected to pursue his workmen's compensation remedies.

An even closer analogy is found in cases in which the injured employee's disability is caused or enhanced by a "compensation neurosis," an unconscious desire to obtain or prolong compensation or sheer anxiety over the outcome of compensation litigation producing a genuine disabling neurosis. The authorities are divided on the compensability of disability resulting from a "compensation neurosis." The majority of the relatively small number of cases deciding the question have held such disability compensable. (See cases collected and discussed in Larson, Workmen's Compensation Law, § 42.24.) "As a matter of compensation theory, the cases awarding compensation have the better of it, since, assuming that the anxiety over compensation and the accompanying neurosis is genuine, the line of causation from the original injury to the present disability is unbroken. The denial of compensation is probably dictated less by causation theory than by a fear that the extremely fine line between malingering and 'compensation neurosis' cannot as a practical matter be successfully

drawn. It will not do to brush aside such claims, however . . . . While it lasts, the neurotic mental disability is as real as any other disability and, in the absence of evidence of malingering, is as much a personal injury." (Larson, Workmen's Compensation Law, § 42.24, p. 7-385 [fns. omitted].)

It appears, therefore, that the Board erred in finding that Employee has not established good cause to reopen and in ordering that Employee take nothing except for medical-legal costs. ■ It does not follow, however, that the Board erred in granting reconsideration, for the referee awarded Employee compensation based on a permanent disability rating of 70 percent. The evidence is in sharp conflict on the question whether Employee's disability is permanent and stationary. Dr. Greenfield reported the disability to be "severe and permanent." He stated: "I do not see how she can regain her health well enough to become active in the job market again." On the other hand, Dr. John A. Verleur, a psychologist who examined Employee at the request of Dr. Greenfield, reported that compensation and psychotherapy "should make a good prognosis possible." Dr. Braverman in his report of February 22, 1974, gave the following prognosis: "With treatment as outlined above, prognosis is excellent for working through the long-standing personality difficulties which at this time are primarily responsible for her inability to function adequately. Shirley is intelligent, motivated, and is quite personable, with the expectation that she would succeed quite well in resuming work although at present she is not able to do so because of the reactivation of symptoms described above."

The Board did not reach this question inasmuch as it found that Employee had not established good cause for reopening.

The opinion and order granting reconsideration and the decision after reconsideration of the Board dated May 17, 1974, are, and each of them is, annulled, and the case is remanded to the Board for further proceedings consistent with this opinion.

Gardner, P. J., and Kerrigan, J., concurred.