608 P.2d 788

**MOTOROLA, INC., Semiconductor Products, Petitioner Employer,**

**Motorola, Inc., c/o INA/PEG, Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Arlene O. Bowman, Respondent Employee.**

**No. 1 CA-IC 2069.**

Court of Appeals of Arizona, Division 1, Department C.

Feb. 14, 1980.

Rehearing Denied March 14, 1980.

Review Denied April 1, 1980.

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears, by Donald L. Cross, David W. Earl, Larry L. Smith, Phoenix, for petitioners employer and carrier.

James L. Stevenson, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for respondent.

Stephen L. Weiss, Phoenix, for respondent employee.

## OPINION

JACOBSON, Judge.

The sole issue in this review of an award of the Industrial Commission is whether an industrial claimant's admittedly stationary condition can be rendered unstationary because of the claimant's reaction to a notice of claim status.

The facts giving rise to this issue are not in material dispute. On May 1, 1975, the respondent employee, Arlene O. Bowman, sustained an industrial injury which was diagnosed as a chronic back strain. Her industrial claim arising from this injury was accepted for benefits.

During the course of Mrs. Bowman's treatment she was referred to Dr. Joseph G. Tursini, a psychologist, for an underlying psychological problem. This problem was diagnosed as an underlying personality trait upon which her distrust of her employers operated to produce psychological pain. For treatment of this problem, Mrs. Bowman received biofeedback and drug therapy which resulted in her showing rapid improvement during 1976. On November 15, 1976, Mrs. Bowman returned to work. The psychiatric condition became stationary in January, 1977.

On August 19, 1977, Dr. Horace S. Fuson, who was treating Mrs. Bowman's organic problems, authored a medical report indicating that her physical problems were stationary without any residual disability. Based upon this report, the petitioner insurance carrier issued a notice of claim status on September 2, 1977, terminating Mrs. Bowman's benefits and discharging her from treatment with no permanent residual disability.

This notice was timely protested by a request for hearing and after a false start, hearings were held on March 21 and April 11, 1978. The evidence presented at the hearings showed that while Mrs. Bowman had no physical problems, she was again suffering from severe depression and anxiety. The cause of this recurrence of psychological problems was Mrs. Bowman's reaction to the notice of claim status terminating her benefits. As Dr. Tursini testified:

"Q. But her condition insofar as it relates to the original injury had become stationary earlier, is that correct?

"A. Yes.

"Q. And her reaction in the fall of '77 was the reaction to the job situation notice [notice of claim status terminating benefits], then, not the reaction to the May 1, 1975 incident?

"A. Yes, that's correct.

"Q. And this is part and parcel of her method of reacting, courtesy, I guess, of the preexisting personality trait, is that right?

"A. Yes."

From this evidence it is clear that Mrs. Bowman's mental condition at the time of the hearings was related to the 1975 injury only insofar as the notice of claim status that triggered that condition arose out of the claim for that injury. The mental condition itself was not a sequela of the back injury, but was due to her underlying preexisting personality trait reacting to the notice of claim status.

The hearing officer found in his award that Mrs. Bowman was physically stationary with no residual disability. However, he further found that psychologically her condition was not stationary and that her condition was causally related to her industrial injury. He therefore continued benefits. The employer and carrier have sought review.

It is basically the carrier's position that Mrs. Bowman's reaction to the notice of claim status was an independent superseding event which broke the chain of causation between the initial industrial injury from which she had completely recovered and her present psychological problems which are the result of her underlying personality traits.

On the other hand, Mrs. Bowman contends that "but for" the issuance of notice of claim status which was the result of her prior industrial injury, her condition would not have deteriorated and thus her present condition is causally related to her industrial injury.

In support of her position, Mrs. Bowman relies upon *Detjen v. Workmen's Compensation Appeals Board*, 42 Cal.App.3d 470, 116 Cal.Rptr. 860 (1974). In *Detjen*, the claimant suffered from an industrial neurosis caused by emotional conflicts in her employment superimposed upon an underlying personality disorder. The claimant apparently recovered from this neurosis and her claim was closed. Subsequently the claimant filed a petition to reopen during the processing of which she received a letter relating to the reopening. We are not told in the opinion who sent this letter or of its contents. In any event, her reaction to this letter brought on a reactivation of her prior symptoms and she was rendered incapable of working. In holding that her present condition was compensable, the California court analogized the claimant's reaction to the letter to the situation brought about by "compensation neurosis," that is, either the unconscious desire to obtain or prolong compensation or sheer anxiety over the outcome of compensation litigation, producing a genuine disabling neurosis.

The court in *Detjen* relied upon 1B A. Larson, Workmen's Compensation Law, § 42.24 (1979), in holding that such a "compensation neurosis" should be compensable and therefore held the claimant's resulting condition was likewise compensable. We decline to follow the California court on this point. The claimant in *Detjen*, like Mrs. Bowman here, had an underlying personality trait which manifested itself in suspicion of employer activities which developed into a neurosis. However, Arizona, unlike California, would not, absent unexpected, unusual, or extraordinary stress, hold such neurosis to be compensable. *Sloss v. Industrial Commission*, 121 Ariz. 10, 588 P.2d 303 (1978). Thus, insofar as the California decision may be based upon a compensable neurosis flowing solely from a work-related incident (receiving the letter in connection with the reopening) such a result would not be required in Arizona.

Moreover, we believe this factor to be controlling in the proper resolution of the problem presented here. Mrs. Bowman's underlying personality trait which caused her to be suspicious of her employer's actions was activated by her industrial physical injury and became manifested in continuing symptoms of pain related to that injury, although no physical reasons were present. This psychological manifestation of pain was resolved during the course of treatment. From a legal standpoint, it must be concluded that at that point the causal relationship between the industrial

injury and the resulting psychological manifestations of that injury ceased to exist. However, the underlying personality trait which fostered employer hostility, although asymptomatic, remained.

The consequence of the issuance of the notice of claim status terminating benefits was to reactivate her dormant employer hostility which had been caused by the underlying personality trait. As Dr. Tursini testified:

"A. . . . I think I said that she had contacted me by phone a number of times previous to my contact with her, at which time she indicated that she was extremely concerned again, because she had gotten this notice of termination [notice of claim status terminating benefits]; that Motorola once again was bailing out on her, and all of the—I found all of the fears and concerns were reestablished.

"Q. The fears that she had had prior to the time you released her to work in November 1976 had reoccurred at this time?

"A. Yes, regarding Motorola and—

"Q. Her employment situation?

"A. Her employment situation."

In our opinion, a neurosis related to "her employment situation" would not be compensable. As the Arizona Supreme Court stated in *Sloss v. Industrial Commission,* *supra* :

"*Fireman's Fund* [*Fireman's Fund Insurance Co. v. Industrial Commission,* 119 Ariz. 51, 579 P.2d 555 (1978)] does not mean that every emotional condition even though work-related, is compensable. . . . To qualify as an injury by accident, the condition must have been produced by the unexpected, the unusual, or the extraordinary stress." 121 Ariz. at 11, 588 P.2d at 304.

There is no contention that Mrs. Bowman's general working conditions expose her to unusual, unexpected, or extraordinary emotional problems. We therefore conclude that a break in the chain of causation occurred between the original industrial injury and Mrs. Bowman's present problems, in that these problems are not now related to that injury, but to her underlying suspicions and fears of employer which in and of themselves are not compensable.

We are further of the opinion that while a recurrence of these fears was triggered by the notice of claim status, which "but for" the initial injury would not have been issued, this does not change the legal result. Mrs. Bowman's psychological reaction to that notice in and of itself cannot be deemed an injury caused by an event arising out of her employment. *See Fireman's Fund Insurance Co. v. Industrial Commission,* 119 Ariz. 51, 579 P.2d 555 (1978).

If her present uncompensable condition is not causally related to a prior compensable event, and the event which triggered that condition is not an accident within the meaning of the Workmen's Compensation Law, it necessarily follows that no compensation liability ensues. *See Keller Manufacturing Co. v. Hoke,* 215 Va. 525, 211 S.E.2d 82 (1975). To hold otherwise would arguably mean that an emotional reaction to a notice of being laid off, by a person with an underlying personality trait which manifests itself in employer resentment, would result in a compensable injury.

For the foregoing reasons, the award is set aside.

HAIRE, P. J., and CONTRERAS, J., concurring.