**Elzbieta JAROSINSKI, Petitioner,**

v.

**INDUSTRIAL CLAIM APPEALS OFFICE of the STATE of Colorado, Unique Casual Restaurants/Fuddruckers, and Insurance Company of the State of Pennsylvania, Respondents.**

No. 02CA0332.

Colorado Court of Appeals, Div. II.

Dec. 5, 2002.

Law Office of O'Toole & Sbarbaro, P.C., Neil D. O'Toole, Denver, Colorado, for Petitioner.

Ken Salazar, Attorney General, Laurie Rottersman, Assistant Attorney General, Denver, Colorado, for Respondent Industrial Claim Appeals Office.

Treece, Alfrey, Musat & Bosworth, P.C., James B. Fairbanks, Denver, Colorado, for Respondents Unique Casual Restaurants/Fuddruckers and Insurance Company of the State of Pennsylvania.

Opinion by Judge CASEBOLT.

Claimant, Elzbieta Jarosinski, seeks review of a final order of the Industrial Claim Appeals Office (Panel) denying her petition to reopen. We affirm.

Claimant sustained an admitted work-related injury in November 1997 when she fell at work, striking her head and neck. Before that injury, she had a medical history of preexisting migraine headaches, dizziness, imbalance, and other problems. The Administrative Law Judge (ALJ) found that the injury temporarily aggravated the migraine headaches and dizziness and authorized treatment for imbalance, visual problems, and depression.

In November 1999 a physician performing a division-sponsored independent medical examination (DIME) placed claimant at maximum medical improvement (MMI). Although he initially assigned a nine percent permanent impairment rating, the physician

retracted it after viewing videotapes showing claimant performing activities that were inconsistent with the symptoms and disability she had reported.

Claimant sought a hearing to overcome the DIME physician's opinions concerning MMI and impairment. Following that hearing in March 2000, the ALJ found against claimant, denied her claim for medical benefits after the date of MMI, and denied and dismissed the claim for permanent medical impairment benefits. Claimant did not appeal that determination.

Claimant filed a petition to reopen in July 2000, alleging that her condition had worsened, as exhibited by increasing depression and visual problems. After a hearing, the ALJ found that claimant had failed to prove an entitlement to reopen because of a change of condition. The ALJ also found that claimant's depression had worsened after the March 2000 hearing and, especially, after he issued his written order. However, he determined that any change of condition was not a natural consequence of the work injury, but resulted from claimant's experiences during the March 2000 litigation, when she had to watch surveillance videotapes of "her apparently inconsistent and possibly fabricated complaints."

The ALJ also concluded that claimant had failed to prove that her continuing migraine headaches and dizziness problems were due to the work injury. In so finding, the ALJ determined that his March 2000 order was conclusive that claimant's continuing headaches and dizziness were not work-related. Thus, the ALJ applied the doctrine of collateral estoppel to preclude relitigation of that issue.

On review, the Panel determined that substantial evidence supported the ALJ's evidentiary finding that the worsening of claimant's depression was caused solely by her reaction to the litigation and the order denying medical benefits. The Panel also determined, as a matter of law, that psychological problems resulting from "litigation stress" and entry of an adverse order were not sufficiently similar to "quasi-course of employment" injuries to justify compensation.

Because it was not raised, the Panel did not address whether the claim for "litigation stress" was subject to the restrictions of the mental impairment statute, § 8–41–301(2)(a) through (d), C.R.S.2002, nor did it consider whether the current or previous version of the statute would apply. Because claimant did not prove any compensable worsening of condition, the Panel also did not consider whether the ALJ correctly had held that collateral estoppel precluded relitigation of the causation issue.

## I.

██ Claimant contends the ALJ and the Panel erred in denying the petition to reopen because she sustained a compensable worsening of her condition. Specifically, she notes the ALJ found her depression worsened as a result of litigation stress, and she asserts that the law supports the compensability of litigation stress and depression under the circumstances of this case. We disagree.

██ Workers' compensation claims may be reopened because of a change in condition. Section 8–43–303(1), C.R.S.2002. A change in condition refers to a "change in the condition of the original compensable injury or to a change in claimant's physical or mental condition which can be causally connected to the original compensable injury." *Chavez v. Indus. Comm'n*, 714 P.2d 1328, 1330 (Colo. App.1985).

██ The claimant has the burden of proof, and in the absence of fraud or clear abuse of discretion, the ALJ's decision concerning reopening is binding on appeal. *Richards v. Indus. Claim Appeals Office*, 996 P.2d 756 (Colo.App.2000). An abuse of discretion occurs when the ALJ's order is beyond the bounds of reason, as where it is unsupported by the evidence or contrary to law. *Pizza Hut v. Indus. Claim Appeals Office*, 18 P.3d 867 (Colo.App.2001).

Generally, proof of causation is an issue of evidentiary fact for determination by the ALJ. Section 8–43–301(8), C.R.S.2002. The ALJ's evidentiary findings must be upheld if supported by substantial evidence in the record. Section 8–43–301(8); *Wal–Mart Stores,*

*Inc. v. Indus. Claims Office,* 989 P.2d 251 (Colo.App.1999).

Here, the ALJ found that claimant was depressed because of the results of the March 2000 hearing and the adverse ruling entered after that hearing. Claimant argues that the stress or depression caused by the litigation process is naturally incident to, and flows from, the underlying injury when neurotic symptoms accompanied by disability occur. She analogizes litigation stress to "quasi-course of employment injuries." We are not persuaded.

■ Under the quasi-course of employment doctrine, compensation is awarded when a claimant is injured while seeking authorized medical treatment. For instance, in *Excel Corp. v. Industrial Claim Appeals Office,* 860 P.2d 1393 (Colo.App.1993), the claimant was injured when he slipped and fell while leaving an authorized physical therapy session. Upholding compensability under these circumstances, the division held that, although such injuries occur outside employment-related activities, an employer has a quasi-contractual obligation to provide treatment for the compensable injury and the claimant has a corresponding obligation to submit to treatment. Under such circumstances, trips to receive authorized treatment constitute an implied condition or expectation of the employment contract.

■ If the element of contractual obligation is missing, however, the resulting injuries are not compensable. *See Schrieber v. Brown & Root, Inc.,* 888 P.2d 274 (Colo.App. 1993)(no implied condition or expectation of the employment contract found when claimant sustained injuries while seeking unauthorized medical treatment and, thus, the injuries were not compensable).

Psychological problems resulting from "litigation stress" and the entry of an adverse order are distinguishable from the type of injuries covered by the quasi-course of employment doctrine. When a claimant is presenting evidence and making argument in support of a claim for benefits, he or she is not performing an activity that may fairly be characterized as a service or activity inherent in the employment contract. Rather, the claimant is exercising the right to make a claim for benefits.

Similarly, when exercising their statutory right to defend a claim by presenting evidence adverse to the claimant, respondents are not engaged in an activity secondary to the employment contract. And the issuance of an ALJ's order resolving the parties' dispute occurs entirely outside of the employment contract, except that such a contract must exist for any benefits to be awarded.

Like the Panel, we reject claimant's theory on both factual and legal grounds. On a factual level, claimant argues that her idiosyncratic psychological reaction to respondents' successful conduct of the March 2000 litigation should itself provide the groundwork for additional benefits. However, if claimant were correct, respondents in future cases would be required to calculate, to the extent they are able, whether the benefits of successful litigation are likely to outweigh the potential costs if the claimant experiences a psychological reaction to an adverse ruling. If this were the law, respondents might forgo the presentation of valid defenses and drive up employers' costs of procuring workers' compensation insurance. Such a result would be contrary to the statutory purpose of assuring the quick and efficient delivery of disability and medical benefits at a reasonable cost. *See* § 8–40–102(1), C.R.S.2002.

■ The adjustment practices of workers' compensation insurers may give rise to tort liability for bad faith claims, including claims for intentional infliction of emotional distress and outrageous conduct. It would be anomalous, as the Panel found, to conclude that an insurer's "bad faith" conduct subjects the insurer to civil liability, but, conversely, an insurer's appropriate defense conduct also subjects the insurer to liability under the Workers' Compensation Act for a claimant's idiosyncratic psychological reactions to the litigation.

Like the Panel, we acknowledge the "majority rule," as set forth in 3 *Larson's Workers' Compensation Law* § 56.05[1] (2002), which allows recovery for compensation neurosis. Under that view, "assuming that the anxiety over compensation and the accompa-

nying neurosis are genuine, the line of causation from the original injury to the present disability is unbroken." *Larson's, supra,* § 56.05[2]. However, as that treatise concedes, there is a substantial contrary line of authority, *see Larson's, supra,* § 56.05[1], and we reject the majority view as inconsistent with the prevailing theory of compensability in Colorado under the "quasi-course of employment" theory.

 In Colorado, the "chain of causation analysis" relied upon by *Larson's* is reserved for cases in which the industrial injury leaves the body in a weakened condition and the weakened condition plays a causative role in the subsequent injury. *See Standard Metals Corp. v. Ball,* 172 Colo. 510, 474 P.2d 622 (1970). However, in quasi-course cases, the immediate cause of the claimant's subsequent injury is an intervening accident sustained while obtaining medical treatment. In this line of cases, the rationale for compensability is the implied contractual obligations of the employer to provide treatment and the claimant to cooperate with it, not the indirect causal relationship to the underlying workers' compensation injury. *See Employers Fire Ins. Co. v. Lumbermens Mut. Cas. Co.,* 964 P.2d 591 (Colo.App.1998).

Because the ALJ did not find claimant's worsened depression resulted from a weakened condition stemming from the compensable injury, but rather resulted from claimant's reaction to the insurer's conduct in its defense of the claim, this case is more analogous to the quasi-course cases than to the chain of causation cases. Thus, again like the Panel, we are persuaded by those authorities that treat litigation stress as an intervening event, not a compensable consequence of the industrial injury. *See Motorola, Inc. v. Indus. Comm'n,* 125 Ariz. 211, 608 P.2d 788 (Ct.App.1980)(claimant's reaction to notice of claim terminating her benefits was independent superseding event that broke chain of causation between initial industrial injury and present psychological problems that were due to preexisting personality trait); *Rodriguez v. Workers' Comp. Appeals Bd.,* 21 Cal.App.4th 1747, 27 Cal.Rptr.2d 93 (1994)(rejecting *Detjen v. Workmen's Comp. Appeals Bd.,* 42 Cal.App.3d 470, 116 Cal.

Rptr. 860 (1974), and finding no compensable injury when the psychiatric injury occurred as a result of the litigation process and not the original injury); *Funaioli v. City of New London,* 61 Conn.App. 131, 763 A.2d 22 (2000)(mental state or nervous disturbance caused merely by the pendency of compensation proceedings is not referable to the injury).

Claimant's petition to reopen was therefore properly denied.

## II.

Claimant also asserts that the ALJ improperly relied upon the collateral estoppel doctrine when he denied her petition to reopen. Because claimant failed to establish a compensable worsening of condition, we, like the Panel, need not consider this issue.

The order is affirmed.

Judge JONES and Judge ROY, concur.