### KAHNE, et al. *v.* ROBINSON

No. 40642          February 3, 1958          100 So. 2d 132

*Lee, Moore & Countiss,* Jackson, for appellants.

*Butler, Snow, O'Mara, Stevens & Cannada,* Jackson, for appellee.

Kyle, J.

This case is before us on appeal by Marcel N. Kahne and Aubey B. Kahne, doing business as B & B Fabric Center from a judgment of the Circuit Court of Hinds County affirming an order of the Workmen's Compensation Commission awarding compensation to Johnney Robinson, an employee of the above named partnership, for temporary total disability for a period of approximately five weeks, and temporary partial disability from the date of the expiration of the above mentioned five weeks period until such time as the claimant may attain maximum medical recovery.

The record shows that B & B Fabric Center is a partnership composed of Marcel N. Kahne and his wife, Aubey B. Kahne, engaged in the business of selling retail fabrics and sewing machines. Johnney Robinson, at the time of his injury, was employed by the partnership as a general handy man and machine repairer. The partnership did not have a Workmen's Compensation insurance policy in effect at that time, nor had it qualified as a self-insurer under the Mississippi Workmen's Compensation Law.

There was no substantial conflict in the testimony concerning the claimant's injury, or the circumstances under which the claimant sustained his injury. The claimant testified that he sustained a serious injury to his back on May 12, 1955, when he lifted a Necchi sewing machine into the automobile of a lady customer which was parked in front of the B & B Fabric Center store in the City of Jackson. The lady had brought the machine to the store for repairs. The claimant stated that he made the repairs and had cleaned and oiled the machine; and when the lady was ready to leave she asked that someone put the machine in her car for her. Mr. Kahne made no response to her request, and the claimant picked up the machine and carried it to the car and as he lifted it into the car he felt something slip in his back. He felt a sharp pain in his back. He made his way into the store and lay

down on a table or counter and called for help. He was taken to the hospital immediately and was examined and treated by Dr. George D. Purvis, an orthopedic surgeon of Jackson. Dr. Purvis found that the claimant had a "very irritable back, a great deal of muscle spasm, and showed signs of nerve root irritation on the left," and the doctor was of the opinion that the claimant had a ruptured intervertebral disc. The claimant remained in the hospital under treatment for the ruptured disc twenty-three days. He showed signs of improvement under the treatment, and Dr. Purvis was of the opinion that he would be able to do light work within a week after his discharge from the hospital. He was again examined by Dr. Purvis on July 5, 1955, and on October 6, 1955. The last examination showed that the claimant was still suffering some pain in the left leg, and there was still a moderate amount of splinting, and muscle spasm of the back muscles. The doctor had x-ray pictures of the lumbar spine made; and the doctor was of the opinion that a surgical operation would be required to give him relief.

The defendants' main contention during the hearings before the attorney-referee and the commission was that they did not have in service eight or more workmen or operatives under any contract of hire at the time the claimant was injured, and for that reason they were not subject to the provisions of the Mississippi Workmen's Compensation Act.

Several witnesses testified concerning the number of employees the defendants had in service at the time of the claimant's injury; and at the conclusion of the hearing the attorney-referee found that, excluding Mr. and Mrs. Kahne, the partners who actually worked in the business, the defendants employed two salesladies, a collector, a maid, and Johnney, the claimant, or a total of five salaried employees, and in addition thereto, two to five commission salesmen; that the regular practice was to have at least three such salesmen, although the number varied from two to five; and that these salesmen

were employees within the meaning and contemplation of the Mississippi Workmen's Compensation Law.

The attorney-referee found that the injury which the claimant had sustained on May 12, 1955, was an accidental injury which arose out of and in the course of his employment; that the claimant had been temporarily and totally disabled as a result of that injury from May 12, 1955, until June 10, 1955, and that the claimant had been partially disabled as a result of that injury from June 10, 1955, to the date of the hearing; and that the claimant was in need of further medical treatment. The attorney-referee found that the B & B Fabric Center regularly employed eight or more workmen or operatives in the same business under a contract of hire, express or implied, and was subject to the provisions of the Mississippi Workmen's Compensation Law as amended. The attorney-referee also found that the claimant's average weekly wage at the time of his injury was $40, and that his wage earning capacity subsequent to June 10, 1955, was $30 per week. The attorney-referee therefore ordered that the B & B Fabric Center pay to the claimant weekly compensation for temporary total disability, as provided by Section 8(b) of the Mississippi Workmen's Compensation Law, as amended, for the period of May 5, 1955, through June 10, 1955, and that the defendant pay to the claimant weekly compensation for temporary partial disability, as provided by Section 8(e) of said law, from June 10, 1955, until such time as the claimant should attain maximum medical recovery and the degree of permanent disability, if any could be determined; and that the defendant pay all medical expenses as provided in Section 7 of the law.

The findings and award of the attorney-referee were affirmed by the full commission on June 25, 1956; and the order of the commission was affirmed by the circuit court.

The main point argued by the appellants' attorneys as ground for reversal of the judgment of the lower court is that the attorney referee and the commission erred in their finding that the appellants had in service eight or more workmen or operatives regularly employed in the business under contracts of hire within the meaning of Section 6998-03, Code of 1942, Recompiled, and that the B & B Fabric Center was an ''employer'' subject to the provisions of the Mississippi Workmen's Compensation Law. It is argued that the sewing machine salesmen were not ''workmen or operatives,'' nor were they in service under any contract of hire; that they were independent contractors; and since the appellants had in service only five ''workmen or operatives'' regularly employed in their business, not including the three machine salesmen, the appellants were not subject to the provisions of the Workmen's Compensation Law. But we think there is ample testimony in the record to support the findings of the attorney-referee and the commission that the three commission salesmen were employees and not independent contractors, and that the appellants were subject to the provisions of the Mississippi Workmen's Compensation Law.

The testimony shows that the work performed by the three commission salesmen constituted an integral part of the business of the partnership. The salesmen were hired for no definite period of time. The machines which they sold belonged to B & B Fabric Center. Each salesman was furnished such number of machines from time to time as he thought that he might be able to sell on the trip that he was about to make. He was required to sign a receipt for the machines delivered to him, and to return machines not sold and receive credit therefor. The machines remained the property of B & B Fabric Center until they were sold and paid for and never became the property of the salesmen. When a salesman sold a machine for cash he collected the purchase price and turned it in to Kahne along with his report. When

a machine was sold on a deferred installment payment plan, the salesman was required to obtain a signed contract from the customer, which would be acceptable to the finance company. The salesmen turned in their cash receipts and the installment payment contracts when they returned to the office. Kahne had a right to accept or reject any deferred payment contracts. If the contracts were accepted, B & B Fabric Center endorsed the contracts with recourse to the finance company. The salesment were paid commissions ranging from 15 to 20 per cent of the sales prices for their services, and were required to service the machines which they had sold. Kahne retained a certain percentage of the salesmen's commissions to take care of "reverts", or machines which were returned or repossessed. Kahne also controlled the maximum price at which the machines were to be sold. The salesmen might cut the price, and thereby reduce their commission, in order to make a sale, but they were forbidden to raise the price. Most of the "leads" for the sales were obtained by radio advertising which was usually arranged for by one of the salesmen on behalf of the B & B Fabric Center. Kahne furnished the script for this advertising, and the contracts for the advertising were signed by one of the salesmen in the name of B & B Fabric Center.

The salesmen furnished their own automobiles, and paid for the gasoline and upkeep of their automobiles, and could sell machines for Kahne anywhere in the state. But there was no written contract between the partnership and the salesmen, and Kahne could fire any of them at will. The salesmen could quit when they desired to do so. Although the salesmen carried the machines with them and had authority to make sales without first obtaining Kahne's approval, Kahne controlled the terms of all sales made by the salesmen on credit; and most of the sales were made on the installment payment plan. Kahne signed the conditional sales contracts as seller. He alone dealt with the finance companies and endorsed

the contracts with recourse. Each sale which was made on credit was therefore subject to his supervision and control; and he instructed the salesmen not to sell in Arkansas because the finance company would not accept contracts executed in that state.

From the facts thus stated, we think that it cannot be said that the attorney-referee and the commission erred in their finding that the commission salesmen were employees of the partnership and not independent contractors. See Life and Casualty Ins. Co. of Tenn. v. Curtis (1936), 174 Miss. 768, 165 So. 2d 435; Vestal and Vernon Agency v. Pittman (1954), 219 Miss. 570, 69 So. 2d 227. See also Fitts v. Zurich Accident & Liability Ins. Co. (Ga. App. 1938), 195 S. E. 293; Murphy v. Daumit (Ill. 1944), 56 N. E. 2d 800; Korthuis v. Soderling & Sons (Minn. 1944), 16 N. W. 2d 285; United States Fidelity and Guaranty Co. v. Lowry (Tex. Civ. App. 1921), 231 S. W. 818.

The next point argued by the appellants' attorneys is that the alleged injury to the appellee did not arise out of and in the course of his alleged employment.

This contention is based upon the fact that the claimant testified that he had sustained an injury to his back several months prior to the date of the injury complained of and had received medical treatment for that injury, and that Mrs. Kahne had instructed him prior to his injury on May 12, 1955, not to lift any machines, and not to pick up anything heavy. It is therefore contended that the injury which the appellee received on May 12, 1955, was due to the claimant's doing of an act which he was forbidden to do, and his failure to observe the warning given to him not to pick up the machine, ''because you know you are not allowed to pick up anything heavy.''

But we think there is no merit in this contention.

Section 6998-04, Code of 1942, provides that compensation shall be payable for disability or death of an employee from injury arising out of and in the course of

employment, without regard to fault as to the cause of the injury. The only exception provided for in the section referred to is that, ''No compensation shall be payable if the intoxication of the employee was the proximate cause of the injury or if it was the willful intention of the employee to injure or kill himself or another.''

In discussing the effect of an employee's doing of a forbidden act upon his right to compensation in a case of this kind, the text writer in 58 Am. Jur., p. 710, Workmen's Compensation, says:

''It is clear that if in doing such a forbidden act the workman is doing something lying wholly outside the sphere of his employment, no recovery is allowable. It is usually held, however, that where a workman does the thing he was employed to do, but does it in a prohibited manner—in other words, if the act which caused the injury was within the sphere of the servant's employment— the mere fact that the doing of such act is forbidden or prohibited by a rule, instruction, or statute will not necessarily prevent it from being considered as arising out of and in the course of the employment. The test to be applied is whether the order which was disobeyed limited the sphere of such employment, or was merely a direction not to do things, or to do them in a certain way, within the sphere of the employment. If the violation does not put the workman out of the sphere of his employment, so that it may be said that he is not acting in the course of it, he is only guilty of negligence, which does not deprive him of the protection of the statute. * * * The fact that the forbidden act is done in an honest attempt to further the master's business is undoubtedly a circumstance strongly tending to show that in doing it the servant did not depart from the sphere of his employment.'' 58 Am. Jur., 710, Workmen's Compensation, par. 202. See also cases cited in footnote 13 to the above mentioned text.

■■■ In the case that we have here Johnney's act constituted negligence—a fault on his part; and under the

common law Johnney would have had no right of action against his employer for damages for personal injuries sustained by him as a result of his own negligence, even if some negligence had been shown on the part of the employer. But under the Workmen's Compensation Law the right to compensation exists without reference to the fault of the employer or the care of the employee. ██ Johnney's act which caused his injury was within the sphere of his employment, and the fact that he had been expressly forbidden to lift the machine was not fatal to his claim.

██ ■ Finally, it is argued that since the appellee had a disability prior to the injury of May 12, 1955, he was not entitled to a disability rating for the injury received on May 12, 1955, which included in part at least the disability resulting from the earlier injury. The appellants' contention on this point seems to be that the appellee's trouble with his back started with an injury which he had sustained several months prior to the injury for which compensation is sought in this proceeding, and that since the appellee had a pre-existing infirmity, it was the duty of the attorney-referee and the commission to apportion the disability which he now suffers between the two injuries, and to award compensation only for that part of the disability which was attributable to the injury of May 12, 1955. But this Court has held in numerous cases that if the employee's injury aggravated a pre-existing disease or infirmity, such injury is nevertheless compensable, and the amount of the award is not scaled down because the disability resulting from the injury complained of may be due in part to the pre-existing disease or infirmity. Cowart v. Pearl River Tung Co., 218 Miss. 472, 67 So. 2d 356; Pearson v. Dixie Electric Power Ass'n., 219 Miss. 884, 70 So. 2d 6; Tate v. Dr. Pepper Bottling Co., 220 Miss. 311, 70 So. 2d 602; Railway Express Agency v. Hollingsworth, 221 Miss. 688, 74 So. 2d 754, 75 So. 2d 639; Sunnyland Contracting Co. v. Davis, 221 Miss. 744, 74 So. 2d 858,

75 So. 2d 638,923; Thornbrough Well Servicing Co. v. Brown, 223 Miss. 322, 78 So. 2d 159; Mississippi Products Co. v. Gordy, 224 Miss. 690, 80 So. 2d 793; Prince v. Nicholson, 229 Miss. 718, 91 So. 2d 734.

We find no error in the record that would justify a reversal of the judgment of the lower court. The judgment of the circuit court is therefore affirmed and the cause remanded.

Affirmed and remanded.

*McGehee, C. J.,* and *Hall, Holmes* and *Ethridge, JJ.,* concur.

## ON MOTION OF APPELLEE FOR ALLOWANCE OF ADDITIONAL ATTORNEYS' FEE.

The judgment appealed from in this case awarding benefits to the appellee under the Workmen's Compensation Act was affirmed by us on February 3, 1958. The appellee has filed a motion for allowance of an additional attorneys' fee to be paid to his attorneys of record for legal services rendered by them on the appeal, and has attached to his motion a signed copy of an amendment to the contract of employment of said attorneys which shows that the appellee has agreed to pay to said attorneys a fee of 33 1/3 per cent of all workmen's compensation benefits to be paid to him under the award made and affirmed by this Court, as compensation for legal services rendered on behalf of the appellee by said attorneys, including legal services rendered on the appeal to this Court. The record shows that a fee of 25 per cent of all compensation payments to be made to the appellee as a result of his injury was approved and allowed by the Workmen's Compensation Commission at the conclusion of the hearing before the commission.

An additional attorneys' fee equal to 8 1/3 per cent of the amount of compensation benefits to be paid to the appellee under the award made is therefore approved and allowed by us for services rendered on said

appeal, making a total attorneys' fee of 33 1/3 per cent to be paid to said attorneys as full compensation for legal services rendered by them in this cause for and on behalf of the appellee, including services rendered before the commission and in the circuit court and on appeal to this Court.

Motion sustained and additional attorneys' fee allowed, making a total attorneys' fee of 33 1/3 per cent.

*McGehee, C. J.,* and *Hall, Holmes* and *Ethridge, JJ.,* concur.