473 So.2d 423 (1985)
SMITH AND SANDERS, INC. and The Travelers Insurance Company
v.
R.B. PEERY, Jr.
No. 54539.
Supreme Court of Mississippi.
July 17, 1985.
*424 Donald V. Burch, Gary K. Jones, Daniel, Coker, Horton & Bell, Jackson, for appellants.
Jim Phyfer, Jackson, for appellee.
EN BANC.
PATTERSON, Chief Justice, for the Court:
This worker's compensation case from the Circuit Court of the First Judicial District of Hinds County presents the question of whether an employee is entitled to benefits for mental injury unaccompanied by physical trauma.
The facts are essentially without dispute. The claimant, R.B. Peery, Jr., had been employed since 1964 as a civil engineer, land surveyor and draftsman with Smith and Sanders, Inc. The company's business began to decline in the late 1970's. On May 22, 1981, while he was at work and on the premises of his employer, Peery was informed by his supervisor that he was to be laid off effective two weeks from that date. As he was packing his belongings, Peery threw a stereoscope through a plate glass window and asked to be taken to see a psychiatrist. Peery suffered what is commonly referred to as a nervous breakdown, requiring a 59 day hospitalization and six (6) shock treatments.
The record indicates Peery began experiencing psychiatric difficulties in 1965, when he was hospitalized and given shock treatments for a nervous condition and depression. The following year he was again hospitalized after exhibiting suicidal tendencies.
Dr. Robert Ritter, a psychiatrist, testified Peery consulted him in 1978 requesting medication to help control his obsessive-compulsive behavior. Noting that Peery was in layman's terms a "workaholic," Ritter prescribed an anti-anxiety drug and renewed the prescriptions for approximately two years. Dr. Ritter also treated Peery following the May 22, 1981 incident.
Uncontroverted testimony by Smith and Sanders' representative is that although the quality of Peery's work had been declining for several years, the reason for his lay off was the company had experienced a dramatic decrease in workload rendering Peery's job unnecessary. Moreover, three employees in Peery's division were terminated prior to May 22, 1981. Smith and Sanders' Vice President Phillip Browning testified he believed "the company showed a great deal of favoritism toward Mr. Peery because he was a long time employee, by not laying him off sooner."
Peery filed a claim for workmen's compensation benefits under Mississippi Code Annotated, § 71-3-7 (1972). In denying this claim the administrative judge made the following findings of fact:
(1) That the claimant ... suffers from a psychiatric condition characterized by Dr. Robert M. Miller as severe depressive neurosis, obsessive-compulsive neurosis, and phobic neurosis; (2) That the claimant's psychiatric condition according to ... Dr. Robert M. Miller ... was caused by being notified of the termination of his employment ... (3) That the *425 claimant has been temporarily and totally disabled from May 22, 1981, through the date of this order, and claimant will continue to be temporarily totally disabled into the foreseeable future; (4) That the claimant has not reached maximum medical improvement; (5) That the claimant's psychiatric condition and resulting disability did not arise out of the claimant's employment with the employer and, therefore, the claimant has failed to prove that he sustained an accidental injury as contemplated by Mississippi Code Annotated, § 71-3-3(b) (1972). (Emphasis added.)
Peery appealed first to the full Workmen's Compensation Commission, which affirmed the administrative judge in holding the claim was non-compensable. Thereafter the Circuit Court of the First Judicial District of Hinds County reversed the case and held the claim compensable because in the circuit court's opinion there was no evidence to support finding of fact number (5).
Aggrieved with that decision, Smith and Sanders perfected an appeal to this Court, assigning as error the circuit court's reversal of the holding of the Mississippi Workmen's Compensation Commission. Smith and Sanders argues the claim is outside the scope of the Mississippi Workers Compensation Act.
Section 71-3-7 of that act provides in part as follows:
Compensation shall be payable for disability or death of an employee from injury or occupational disease arising out of and in the course of employment, without regard to fault as to the cause of the injury or occupational disease. An occupational disease shall be deemed to arise out of and in the course of employment when there is evidence that there is direct causal connection between the work performed and the occupational disease.
Where a preexisting physical handicap, disease, or lesion is shown by medical findings to be a material contributing factor in the results following injury, the compensation which, but for this paragraph would be payable shall be reduced by that proportion which such preexisting physical handicap, disease or lesion contributed to the production of the results following the injury.
"Injury" is defined in § 71-3-3(b) in part as an "accidental injury or accidental death arising out of and in the course of employment ..."
"Disability" is defined in § 71-3-3(i) as "incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or other employment, which incapacity and the extent thereof must be supported by medical findings."
Dunn's Workmen's Compensation, § 114 (1982) (3rd Ed.), states the following:
In general, where the claim is based upon a mental or nervous disease, it is viewed with the normal suspicion attending claimed disabilities which have no physical cause traceable to objective findings, and the burden of proof, which rests upon the claimant, is greater than ordinary cases. The accident must be established by evidence bringing within the realm of probability, and the causal connection with the accident must be shown by "clear evidence," and must not be remote.
Citing Johnson v. Gulfport Laundry & Cleaning Co., 249 Miss. 11, 162 So.2d 859 (1964).
In the Johnson case the claimant sought workmen's compensation benefits for a nervous condition alleged to be the result of overwork. At a hearing before the Workmen's Compensation Commission the claimant testified "the interruptions of the telephone caused her to be nervous and upset to the extent she could not work." 249 Miss. at 14, 162 So.2d at 860. No specific event could be pinpointed as the cause of Mrs. Johnson's leaving her job; she simply did not return after the Christmas holidays. In its findings of fact the Commission stated, "`The evidence in the case does not reveal the occurrence of any *426 incident, accident or traumatic experience, which did or could have caused or aggravated any physical disability to the claimant;' ..." 249 Miss. at 16, 162 So.2d at 860-61.
This Court affirmed the Commission's holding
... that the claimant's disability at the time of the hearing was not due to any injury arising out of and in the course of her employment by the Laundry Company, but was attributable solely to a psychoneurotic condition or emotional disturbance due to causes other than her employment by the Laundry Company.
249 Miss. at 21, 162 So.2d at 863.
The court also noted the lack of evidence that there was "any untoward event, unusual occurrence, accident, or injury incident to her employment by the Laundry Company to which the claimant's disability could be causally related." 249 Miss. at 18, 162 So.2d at 862. (Emphasis added.)
We interpret the Johnson case to require a claimant seeking worker's compensation benefits for mental injury unaccompanied by physical trauma to prove such injury can be directly linked to some "untoward event, unusual occurrence, accident or injury incident to ... employment." 249 Miss. at 18, 162 So.2d at 862. We are of the opinion Peery failed to satisfy this requirement in two ways.
First, there is much credible evidence to the effect that Smith and Sanders terminated Peery because business conditions had eliminated the need for his employment. In an economic system such as ours, layoffs are unfortunate but not unusual events. They cannot in our opinion be characterized as untoward or unusual occurrences. Were compensation proper for Peery, benefits could be held to extend to any employee who suffers depression or anxiety upon being rightfully discharged. We do not think this was the legislative purpose of the Worker's Compensation Act, which provides for neither unemployment compensation nor general health insurance, but for compensation for injuries arising out of and in the course of employment. For these reasons we are of the opinion the holding of the circuit court must be reversed.
We observe additionally that Peery failed to prove the injury was caused by the termination. Rather, the record discloses a long history of mental and emotional disorders prior to May 22, 1981. Peery would thus be entitled to apportioned benefits if he were entitled to any compensation at all. Because we hold he is not, we do not discuss this issue further.
We note our decision comports with the rule announced in other jurisdictions that a mental condition to be compensable must have been caused by something more than the ordinary incidents of employment. Motorola, Inc. v. Industrial Commission, 125 Ariz. 211, 608 P.2d 788 (1980); Archer v. Industrial Commission, 127 Ariz. 199, 619 P.2d 27 (1980); Loh Lin v. Burroughs Corp., 427 N.Y.S.2d 78, 75 A.D.2d 702 (1980); Thomas v. Workmen's Compensation Appeal Board, 423 A.2d 784 (Pa. Cmwlth.Ct. 1980); Sloss v. Industrial Commission, 121 Ariz. 10, 588 P.2d 303 (1978); Jose v. Equifax, Inc., 556 S.W.2d 82 (Tenn. 1977); School District # 1 v. Dept. of Industry, Labor & Human Relations, 62 Wis.2d 370, 215 N.W.2d 373 (1974).
For the foregoing reasons the judgment of the Circuit Court of the First Judicial District of Hinds County is reversed and the Order of the Workmen's Compensation Commission is reinstated.
REVERSED AND RENDERED.
WALKER and ROY NOBLE LEE, P.JJ., and HAWKINS, DAN M. LEE, and ANDERSON, JJ., concur.
ROBERTSON, PRATHER and SULLIVAN, JJ., dissent.
ROBERTSON, Justice, dissenting:

I.
At the outset, several would-be issues need be dispatched.
First, there is no question but that R.B. Peery, Jr. has in fact experienced an occupational *427 disability, temporarily total in extent from May 22, 1981. Whatever "normal suspicion" some may have regarding mental disabilities, no one may have such suspicions rationally in this case, for we are told with no dispute that Peery was hospitalized for fifty-nine (59) days and received six shock treatments as a result of the nervous breakdown he suffered on the job on May 22, 1981. Beyond that, the Administrative Law Judge and the Workers Compensation Commission expressly found that Peery was temporarily totally disabled and that this disability would continue into the foreseeable future. That finding being supported by substantial evidence, we must proceed on the assumption that the fact thereof has been established. R.B. Peery, Jr. was not and is not a malingerer and that some perceive others so to be does not justify denying compensation to Peery for his disability.
Second, Peery was on the job on May 22, 1981, when he had the experience which in fact and in substantial part caused his disability. Without dispute the facts reflect that on May 22, 1981, Peery was informed by his supervisor that he was to be laid off, effective two weeks from that date. This incident precipitated Peery's nervous breakdown immediately manifested by his throwing a piece of equipment through a plate glass window which in turn led directly to his hospitalization and disability. Again we have a finding of fact by the Administrative Law Judge and the Commission
(1) that the claimant ... suffers from a psychiatric condition characterized by Dr. Robert M. Miller as severe depressive neurosis, obsessive-compulsive neurosis, and phobic neurosis; [and] (2) that the claimant's psychiatric condition according to ... Dr. Robert M. Miller ... was caused by being notified of the termination of his employment... .
When coupled with the fact that Peery indisputably experienced a total disability beginning May 22, 1981, the conclusion seems inescapable that in substantial part Peery's disability in fact arose out of and in the course of his employment. Without doubt the employment relationship existed at the time Peery experienced his nervous breakdown. Peery was advised that two weeks hence he would be laid off. Peery was not terminated. Further, there is no suggestion that Peery was laid off "for cause" or for any reason which might operate to defeat his claim for compensation benefits. Presumably he had a reasonable expectation of recall if his employer's business revived. In my view the result for which I argue would obtain even if Peery had been terminated. I note the distinction, however, because the majority on several occasions incorrectly uses the word "terminated" and the point might be important to some.
Third, I agree that Peery's disability was not caused solely by and did not arise solely out of his employment. Although there is before us no finding of fact to this effect, the record is clear beyond peradventure that Peery began experiencing mental illness as long ago as 1965 and that he had been previously hospitalized in connection with this illness. He was nevertheless wholly functional prior to May 22, 1981. Put another way, Peery was occupationally able prior to May 22, 1981. Still, under our law he is not entitled to full benefits but to apportioned benefits. Miss. Code Ann. § 71-3-7 (1972). I would hold to that effect and remand for a finding of the extent of Peery's disability which may be fairly said to be work related and that which is not.
Fourth, this is not a case of a worker claiming that he or she has suffered a compensable disability attributable solely to the "pressures of the job" and not tied to any specific incident. This state and others have heretofore considered outcome determinative the inability of the claimant to point to an isolated incident, accident or traumatic experience giving rise to the disability. See Johnson v. Gulfport Laundry, 249 Miss. 11, 16-18, 162 So.2d 859, 860-62 (Miss. 1964). While I am not convinced that such a rule is sound, see Albertson's, Inc. v. Workers Compensation Appeals Board, 131 Cal. App.3d 308, 182 Cal. *428 Rptr. 304 (1982), it presents no hurdle insurmountable by Peery. Here there was an untoward event, unusual occurrence or injury incident to-wit: the instruction by Peery's supervisor that, two weeks hence, he was to be laid off.

II.
I realize that on first blush the intuitive reaction of many will be that this case should not be held compensible. On the other hand, a fair and sensitive reflection upon these facts in the light of the philosophy[1] and purposes of our workers compensation laws leads powerfully to the opposite conclusion.
We begin with the idea that it is economically necessary and socially desirable that people work. Yet many are unable to engage in gainful employment because of deleterious experiences they had no practicable choice but to expose themselves to. Our workers compensation laws seek to provide monetary benefits to those persons for their support and rehabilitation. It is a fact historically and statistically demonstrable that employees do experience disability with certain statistically predictable frequency. See New York Central Railroad Company v. White, 243 U.S. 188, 203, 205, 37 S.Ct. 247, 252, 61 L.Ed. 667, 675, 676 (1917). This is because it is impracticable, if not impossible, to remove from the places and conditions of their employment all circumstances and conditions which cause injury or disability.
The moral sense of every civilized nation on the face of the globe has led to the provision of public assistance in varying forms and amounts to those disabled from or unable to support themselves, although many grumble about it. One of the avowed purposes of workers compensation schemes has been relieving society and its state from the burden of supporting disabled bread winners and their dependants. Franklin v. Jackson, 231 Miss. 497, 503, 95 So.2d 794, 796 (1957). It is much too late to question that our law should be given a broad and liberal construction that its ends may be achieved. Deemer Lumber Co. v. Hamilton, 211 Miss. 673, 682, 52 So.2d 634, 638 (1951); L.B. Priester & Son, Inc. v. Bynum, 244 Miss. 185, 197, 141 So.2d 246, 249 (1962); Big "2" Engine Rebuilders v. Freeman, 379 So.2d 888, 889 (Miss. 1980).
Compensation is regarded as a cost of doing business, a cost no doubt to be passed on to the consumer of the employer's goods or services. McCluskey v. Thompson, 363 So.2d 256, 259 (Miss. 1978). Notions of fault have long since been regarded as outmoded in this area of the law. Kahne v. Robinson, 232 Miss. 670, 683, 100 So.2d 132, 136 (1958). This is because many employees come to experience work connected disability under circumstances where no thoughtful person could identify blameworthiness or moral fault on the part of the employer. Conversely, there are many circumstances where absurdity would attend denial of compensation even though the employee himself may have been careless or inattentive or, in a word, at fault. The structure of workers' compensation laws throughout this country and particularly in the statuory scheme enacted in this state requires that we be sensitive to the reappearance of notions of fault, and excise them as they rear their heads.
In this context we should reject Smith & Sanders' argument that it cannot be blamed for the economic conditions which required that it lay off Peery and other workers. An employer has the right to fire or lay off workers for good reason, for bad reason or for no reason at all, so long as he does not do it for a legally impermissible reason. See Carter v. United States, 407 F.2d 1238, 1244 (D.C. Cir.1967); Galante v. Sandoz, Inc., 192 N.J. Super. 403, 470 A.2d 45, 48 (1983). But this right is no different than the employer's right to use in his *429 workplace machinery or procedures experience tells will produce some employee disabilities statistically predictable over time. Injuries as a result of encounters with such machinery or processes are considered inevitable and where they result in disability are compensible.
In a capitalistic economy, that principle known as the business cycle advises us that from time to time there will be economic recessions. Experience teaches that when such occur, lay-offs and firings and unemployment generally are inevitable. The risk of such a lay-off or firing is one that an employee assumes when he goes to work the same as he assumes the risk of encountering whatever other dangers are attendant upon the particular workplace. And the encounter of these dangers can be disabling and, as indicated above, has in fact been disabling in this case.
It is no answer to say that others laid off by Smith and Sanders experienced no disability or that most employees laid off do not have nervous breakdowns. That many employees operate a lathe or scale the skeleton of a building under construction without incident  perhaps even because more skillful or attentive  has never been thought a reason to deny compensation to the few who are injured and becomes disabled.

III.

A.
In the final analysis the Administrative Law Judge and the Mississippi Workers Compensation Commission have found:
that the claimant's [Peery] psychiatric condition and resulting disability did not arise out of the claimant's employment with the employer and, therefore, the claimant has failed to prove that he sustained an accidental injury as contemplated by Miss. Code Ann. § 71-3-3(b) (1972).
It is this finding of the Commission upon which the majority relies in affirming. I regard this finding as (a) wrong and (b) well within our authority to correct.
The second point first. Though arguably phrased as a finding of ultimate fact, a review of the other findings made by the Administrative Law Judge and the Commission make it clear that, the evidentiary facts being wholly beyond dispute, this final finding is a pure conclusion of law. The Commission expressly finds that claimant did suffer from a mental or psychiatric illness characterized as "severe depressive neurosis, obsessive-compulsive neurosis, and phobic neurosis", that this condition was in fact caused by Peery's being notified of his impending lay-off, which according to the uncontradicted facts occurred on the job and was administered by Peery's supervisor, and that Peery has in fact experienced occupational disability temporarily total in extent. Seen in this light, the Commission's ultimate finding of no work connection is nothing but a legal conclusion drawn from the facts. According to what I have said above, I trust it is now seen that this legal conclusion is inconsistent with the philosophy and purposes of our compensation laws. I will attempt to demonstrate this error more specifically by reference to the structure of our Workers Compensation law and specific principles which have been established by prior litigation.
Concentrating upon the issue where the Commission and this Court's majority have ultimately rejected Peery's claim, I certainly concede that for a disability to be compensible it must have arisen out of and in the course of employment. We shorthand this test by asking whether the disability is "work connected". The words formally used in the statute: "arising out of and in the course of" have been held by us to present an inquiry of whether the risk which caused the injury is "reasonably incident to the employment", Big "2" Engine Rebuilders v. Freeman, 379 So.2d 888, 890 (Miss. 1980), not whether the work was the proximate cause of the injury.
The injury arises out of and in the course of employment if the employment aggravates, accelerates, or contributes to the disability as opposed to being the sole or principal cause. See Dunn, Mississippi *430 Workmen's Compensation § 164 (3d Ed. 1982). These are the established tests in deciding whether the disability has enough work connection to make available the limited remedy of the Workers' Compensation Law.
An indispensable step in deciding a case such as this is to get a clear focus on the source of the risk which caused the injury and to ask whether it was (1) distinctly associated with the employment, (2) personal to the claimant, (3) neutral, or (4) mixed. 2 A. Larson, The Law of Workmen's Compensation §§ 7.10, 7.20, 7.30, 7.40, (1984).
If the risk is in the first category, the injury and resulting disability obviously arise out of and in the course of employment. If the second (personal), it does not so arise, as when a workers' personal enemy follows him to work and there inflicts an injury for reasons and in circumstances having no connection with the work. Similarly, if a worker takes a bomb to work and its exploding independently causes injury to the worker, that imported, personal risk is not work connected. 1 Larson § 7.20. See Space Steel Corp. v. Jones' Dependents, 248 So.2d 807 (Miss. 1971) (no compensation allowed where employee killed with pistol he had brought with him to employer's premises).
The neutral risk, such as an act of nature or being attacked on the job for unknown reasons by a person not connected with either the worker or the employment, arises out of and in the course of employment, according to the positional risk doctrine, if the work placed the worker within the ambit of the risk. In this instance, neither the work nor the worker created the risk of the injury, but it is regarded as work-connected since the cost of the injury must fall on one of them and the work connection, through slender, is at least stronger than any connection with the worker's personal activity. See 1 Larson § 7.30; Jackson v. Bailey, 234 Miss. 697, 107 So.2d 593 (1958) (compensation allowed where employee struck by lightning); Wiggins v. Knox Glass, Inc., 219 So.2d 154 (Miss. 1969) (compensated when on-the-job injury was caused by a tornado); Big "2" Empire Rebuilders v. Freeman, 379 So.2d 888 (Miss. 1980) (compensated when on-the-job injury was caused by unexplained attack by unknown assailant); Johnson v. Roundtree, 406 So.2d 810 (Miss. 1981) (compensation allowed taxicab driver victim of robbery and assault).
We hasten to add that when we say the cost of the injury should be borne by the employer, we really mean that the workers' compensation law places part of the cost on the employer and requires that the worker also bear part of the cost. Workers' compensation benefits provide relatively small payments for loss of wages and wage earning capacity (for a May, 1981, injury, the lesser of two/three of the actual loss or $112.00 per week, which provides $5424.00 a year as a maximum recovery). Hence the rationale of the rule on the neutral risk is also influenced by the limited remedy of workers' compensation. The court's oft-expressed view that (1) close questions of compensability should be resolved in favor of the worker, e.g., Big "2" Engine Rebuilders v. Freeman, 379 So.2d 888, 889 (Miss. 1980), and (2) the act should be interpreted liberally to carry out the legislature's purposes in adopting remedial, social legislation, Pontotoc Wire Products Co. v. Ferguson, 384 So.2d 601, 603 (Miss. 1980), are also influenced by the restricted remedy available to the worker and the fact that the employer benefits by being protected against any other remedies by the worker. Miss. Code Ann. § 71-3-9 (Supp. 1972).
A mixed risk (employment cause and personal cause combine to produce the harm) arises out of and in the course of employment if the work aggravates, accelerates or contributes to the injury. As Larson says:
The most common example is that of a man with a weak heart who dies because of strain occasioned by the employment. In broadest theoretical outline, the rule is quite simple. The law does not weigh the relative importance of the two causes, nor does it look for primary and secondary causes; it merely inquires whether the employment was a contributory *431 factor. If it was, the concurrence of the personal cause will not defeat compensability.
1A Larson § 7.40.
The rationale for a neutral risk being regarded as work-connected is also applicable to the mixed risk. In fact, if one views as a continuum the scale from "distinctly employment" to "personal", a mixed risk is usually closer to "distinctly employment" than is a neutral risk. That is, a mixed risk presents a stronger case for compensation than a neutral risk. This is even truer under the Mississippi law with its provision for reducing the already limited permanent disability income award by the proportion of the personal cause if that cause is a preexisting disease.

B.
In a long line of cases this Court has allowed compensation for injuries as arising out of and in the course of employment when physical or emotional stress only contributed to the injury. E.g., Insurance Dept. of Miss. v. Dinsmore, 233 Miss. 569, 102 So.2d 691, aff'd on rehearing, 104 So.2d 296 (Miss. 1958); Mississippi Ass'n of Insurance Agents v. Dependents of Seay, 218 So.2d 413 (Miss. 1969); Charles N. Clark Associates, Ltd. v. Dependents of Robinson, 357 So.2d 924 (Miss. 1978).
The question presented by this case, stated in its most refined form, is whether the risk of occupational disability attendant upon mental illness or disorder from learning of an employment layoff is a personal or an employment risk. We are not called on to answer the question of whether the risk of mental illness or disorder upon learning of termination of employment with or without cause is a personal or an employment risk, nor the question of mental illness or disorder upon being disciplined for cause. Rockwell International v. Workers Comp. App. Board, 120 Cal. App.3d 291, 175 Cal. Rptr. 219 (1981) (denying compensation for stress of disciplinary action at work).
The question must be approached from the worker's point of view. Indeed, we run headlong into four decades of consistent adjudications if we do anything other than limit our view to the worker's response. This in mind, I am unable to characterize the response to whether one's employment will continue for reasons over which the worker has no control as altogether personal or as having only an insignificant nexus to the employment. The layoff here was on account of conditions in no way related to the quality of the worker's performance. Absent more express direction from the legislature, I refuse to join in holding that the worker's mental or emotional response to being told of the layoff is altogether personal, or that the risk of a mental or emotional disorder is one which an employee must bear as an element of nonemployment life.
If the worker's mental or emotional response had arisen from the workload being increased to a level that the worker found overtaking, to my mind there would be an obvious work connection. E.g., Carter v. General Motors Corp., 361 Mich. 577, 106 N.W.2d 105 (1960), noted 21 La.L.Rev. 868 (1961), 109 Pa.L.Rev. 1185 (1961). To say that the worker's response to an opposite change in the workload has no employment connection does not comport with common sense or logic. There is an employment connection. In the face of this reality, I would have us hold that the employer must bear the cost of (partially) compensating for disabilities caused by this employment-connected pressure as an element of nonemployment life, the same as other work-connected risks.
I regard our facts as presenting a case in which the source of the risk is mixed, part personal and part employment connected. Assuming arguendo that this is a close question, I would answer by recognizing the following proposition to which we have long been committed: (1) Close questions should be resolved in favor of compensating a worker whose injury and disability have an employment connection. (2) A liberal construction of the Workers' Compensation Law is proper in order to accomplish its purpose as remedial, social legislation. *432 (3) "Arising out of and in the course of employment" is a test far from the proximate cause concept of tort law, requiring only that the employment rationally contribute to the injury as a means of establishing a reasonable relationship and thus some minimal level of causation. (4) If the employment combines with a personal weakness of the worker so as to aggravate or to contribute to an injury, the injury arises out of and in the course of employment. (5) Disability income benefits, which provide only a limited remedy in any event, are further reduced for permanent injury by the apportionment provision of § 71-3-7, which certainly would operate in this case.
Accordingly, I would affirm so much of the judgment of the circuit court as reverses the Commission's holding that the occupational disability of R.B. Peery, Jr. did not arise out of and in the course of employment, and I would remand for a finding on the date of maximum medical recovery and apportionment.
PRATHER and SULLIVAN, JJ., join in this opinion.
NOTES
[1] For an excellent general discussion of the philosophy of workers compensation laws see Satterfield, An Introduction To The Mississippi Workers Compensation Act, 20 Miss.L.J. 27, 29-30 (1948); see also Dunn, Mississippi Workmen's Compensation, § 2 (3d Ed. 1982), and National Commission On State Workmen's Compensation Laws, Compendium On Workmen's Compensation 21-24 (1973).