475 So.2d 813 (1985)
BROWN & ROOT CONSTRUCTION COMPANY and Kemper Insurance Company
v.
Gerald C. DUCKWORTH.
No. 54964.
Supreme Court of Mississippi.
September 4, 1985.
William D. Blakeslee, Bryant, Stennis & Colingo, Gulfport, for appellant.
Stanton J. Fountain, Jr., Bobby G. O'Barr, Biloxi, for appellee.
*814 Before PATTERSON, C.J., and DAN M. LEE and ANDERSON, JJ.
ANDERSON, Justice, for the Court:
This is an appeal from a judgment of the Circuit Court of Harrison County, First Judicial District, affirming an award of benefits by the full Mississippi Workers' Compensation Commission.
This case involves an unusual injury. In July 1979, Gerald Duckworth was hired by Brown & Root Construction Company as a semi-skilled laborer. Initially, he was assigned to miscellaneous groundskeeping tasks. After he had been on the job about four months, one of the foremen got sick. In his absence Duckworth was promoted to the supervisory position of foreman; when the previous foreman recovered Duckworth was temporarily placed in the job as "leadman" and then was raised back to the position of foreman. Late in 1979 Duckworth's immediate supervisor, Ray Thomas, advised him that the work load did not justify the presence of two foremen, and that Duckworth would have to be demoted back to the ground maintenance crew. Duckworth contended that Thomas promised him he would be reinstated as a foreman as soon as an opening occurred, since he did not want to hire a man from outside the company. Duckworth alleges that Thomas reneged on this agreement by hiring several people from his old construction company when openings in a foreman's slot occurred. According to Duckworth, Thomas talked to him many times over the next few months and promised him that he would be raised back up to a foreman's position, provided an opening came about and that Duckworth learned about janitorial work. By this time, Duckworth's immediate supervisor was a man named Jack Simpson, whom he alleged showed displeasure when Duckworth tried to learn about janitorial work.
On February 20, 1980, Duckworth went to Thomas' office to complain about Simpson's attitude. After receiving this complaint, Thomas allegedly told Duckworth to forget about the janitorial work and just do the regular groundskeeping work Simpson directed. This statement, in combination with the gestures and mannerisms Thomas employed on the occasion, apparently convinced Duckworth that Thomas had been lying all along about his intention to promote him. Duckworth claimed that on leaving Thomas' office he felt the onset of a headache and was extremely tense. By the time he was back at his workplace, he was complaining of a burning in the left side of his head and arm and he asked a fellow employee to walk him over to the first-aid room. The doctor was out of the office when Duckworth and his companion arrived and as they left the office, Duckworth collapsed and lost consciousness. He was taken to a nearby hospital where he remained for nine days. The attending physician, Dr. Victor Bazzone, diagnosed him as having suffered a stroke. He was released from the hospital, but was unable to work.
He was hospitalized again in May of 1980. On November 12, 1980, Duckworth was again rushed to the hospital when he lost consciousness shortly after complaining of a severe headache and a burning sensation in his head. In the hospital, his condition deteriorated; in addition to the headache, he now had paralysis of his left side and weakness of his left arm. Dr. Richard Buckley, a neurologist, performed various neurological tests on Duckworth and determined that he had not suffered a stroke. He then referred Duckworth to Dr. J. Harry Feamster, a clinical psychologist, for tests and hypnotic therapy. The therapy appears to have been successful; Duckworth can now walk without the aid of crutches and is capable of gainful employment.
On May 27, 1980, Duckworth filed a motion to controvert with the Mississippi Worker's Compensation Commission, alleging that he had suffered a compensable injury as a result of the incident on February 20. Brown & Root answered, denying that the injury arose from or was connected with his employment and contending *815 that it arose from a pre-existing disease, lesion or handicap.
Pursuant to statute, hearings were held before Administrative Judge Ronald T. Russell.
Two medical experts gave unrebutted testimony that Duckworth had suffered an hysterical conversion reaction. In this condition, emotions become so intense that the person cannot control them, and the body converts these emotions into physical symptons. Both experts said that, in their opinion, Duckworth's reaction had been triggered by the incident with Ray Thomas on February 20.
On October 26, 1981, the administrative judge issued his findings of fact. They were: (1) that on February 20, 1980, Duckworth sustained a compensable injury which arose out of and in the course and scope of his employment, in that he had experienced a psychological trauma which resulted in the manifestation of stroke-like symptoms; (2) that Duckworth as a result of this injury was temporarily totally disabled from February 20, 1980, to January 27, 1981; (3) that Duckworth reached his maximum medical recovery on January 27, 1981, with no permanent disability or loss of wage-earning capacity; (4) that Duckworth's average weekly wage at the time of the accident was $231.96; (5) that because of the unusual circumstances of the case the employer and insurer were not liable for the penalties provided by MCA § 71-3-37(5) (1972).
The administrative judge issued an order that Brown & Root and Kemper Insurance Co. pay Duckworth $98 for every week of his disability and also pay for reasonable and necessary medical services and supplies as his injury or recovery may require.
Brown & Root appealed to the full commission, which held a hearing on March 1, 1982. After oral argument and review the full commission issued an order affirming the finding of the administrative judge.
Brown and Root then took an appeal to the Circuit Court of Harrison County, where oral argument was heard and Circuit Judge Griffin issued an order affirming the award of the full commission. This order was rendered on August 26, 1982. Brown & Root's appeal from it is now before this Court.
After briefs were filed in this case, this Court decided Smith & Sanders, Inc. v. Peery, 473 So.2d 423 (Miss. 1985). It is now clear that under appropriate circumstances, an employee can be compensated for mental/nervous injuries not immediately caused by physical trauma. Smith & Sanders, supra, at 426. We also addressed the problem of how such a claimant must show causation. In so doing, we commented favorably on the argument advanced by the present appellants that "a mental injury, to be compensable, must have been caused by something more than the ordinary incidents of employment." Id. at 426. We construed our cases, especially Johnson v. Gulfport Laundry & Cleaning Co., 249 Miss. 11, 162 So.2d 859 (1964), as imposing a requirement that the injury be related to some "untoward event, unusual occurrence, accident or injury incident to [the claimant's] employment." Smith & Sanders, supra, at 426, quoting Johnson, 249 Miss. at 18, 162 So.2d at 862.
Thus, in order to overturn the finding of compensability, we must rule that the incident between Duckworth and Thomas did not constitute an "untoward event" or an "unusual occurrence". We are in no position to do this. The finders of fact, who heard the witnesses in person, obviously ascribed considerable significance to this encounter. The record would not justify our saying that they were wrong. On appeal, the findings of the Workers' Compensation Commission will be affirmed if they are supported by substantial evidence. Myles v. Rockwell International, 445 So.2d 528 (Miss. 1983); Johnson v. Ferguson, 435 So.2d 1191, (Miss. 1983); Shippers Express v. Chapman, 364 So.2d 1097 (Miss. 1978). The evidence adduced by Duckworth below meets that requirement.
Appellant protests that anxiety over promotions is merely an integral part of any job experience, and that our affirming the *816 finding of compensability here would make employers no-fault insurers of their employees' sense of well-being. We are not persuaded that today's decision will have such apocalyptic results. It is quite true that all employees normally aspire to promotion. But where the employer, through its agent, deliberately creates a heightened expectation of advancement in a particular worker and then triggers a reaction by doing something the worker could reasonably perceive as a betrayal, we have a situation which is extraordinary and (we hope) unlikely to recur.
The other assignments of error lack merit and do not warrant extended discussion.
AFFIRMED.
PATTERSON, C.J., ROY NOBLE LEE, P.J., and HAWKINS, DAN M. LEE, PRATHER, ROBERTSON and SULLIVAN, JJ., concur.
WALKER, P.J., not participating.