609 So.2d 1247 (1992)
Marcella J. BATES
v.
COUNTRYBROOK LIVING CENTER and National Union Fire Insurance Company.
No. 90-CC-0829.
Supreme Court of Mississippi.
August 26, 1992.
Charles E. Miller, Angela Taylor Miller, Miller & Miller, Brookhaven, for appellant.
Clifford B. Ammons, Watkins & Eager, Jackson, for appellee.
En Banc.
ROY NOBLE LEE, Chief Justice, for the Court:
Marcella Bates, the claimant, sought compensation benefits from Countrybrook Living Center, employer, and National Union Fire Insurance Company, carrier, for a psychological injury unaccompanied by physical trauma. The Administrative Law Judge awarded benefits, but the Commission reversed the order, finding that claimant failed to prove by clear and convincing evidence that her injuries were caused by her employment. The circuit court affirmed the Commission. Claimant has appealed to this Court.

FACTS
On November, 1986, claimant attended a regular meeting of all the nurses at the nursing home. The purpose of these regularly scheduled, state mandated meetings was to provide in-service training. However, at this meeting, the supervisor, Ms. Pepper, used the time to discuss various problems that had been occurring in the nursing home. Eighteen patients' feeding tubes had been removed and some had to be taken to the emergency room to have them surgically reinserted. Also, someone had mixed up the medication cards, which could have caused a patient to receive the wrong medicine.
When the group meeting ended, the supervisor scheduled individual meetings with each nurse. After investigating these occurrences, the supervisor and the director of nurses suspected that claimant had committed the acts. They admitted that they had no proof other than circumstantial evidence.[1] When claimant came in for her meeting, the supervisor told her that she *1248 had decided to terminate her. The claimant denied the charges and the supervisor decided that there was reasonable doubt about who committed the acts, and, therefore, she destroyed the notes from the meeting and stated that she would pretend that it never happened. She withdrew her threat to fire claimant and told her that she was "still employed in good standing." The supervisor conducted individual meetings with all of the other nurses, but admitted that she never threatened to fire any of the others.
The nursing home social worker was also present at the meeting to take notes. She described the supervisor as very positive and concerned about the home and stated that the supervisor was not angry, threatening or overtly mean. She confirmed that after the supervisor heard claimant's denial of the charges she tore up the notes at the supervisor's request.
After the meeting, all of the trouble stopped at the home. Three weeks subsequent to the meeting with the supervisor, claimant became a full time employee. Bates left the nursing home in July 1987.
Claimant saw several doctors for psychological help after the incident with her supervisor. Dr. Summers saw her in July 1987. His report noted that she had been in good health until two years prior, or sometime in 1985. His report also listed a host of stress related symptoms that plagued her: insomnia, poor appetite, depression, and crying spells, among others.
Dr. Ritter also saw Bates. In his opinion, she had been ill "for quite a time." He also described the cause of her illness as biochemical rather than work-related. Claimant also saw Dr. Hearne, a clinical psychologist and another psychiatrist, Dr. Wright, who believed that Bates' problems were work-related.
After hearing all of the evidence, the Commission denied benefits, finding that Bates' problems were "a psychoneurotic condition or emotional disturbance due to causes other than her employment by the Countrybrook Living Center."

ISSUE

Whether the claimant failed to prove by clear and convincing evidence any causal relation between her employment and any alleged psychological or psychiatric disability and whether the Workers' Compensation Commission had substantial evidence to deny benefits.
On November 14, 1989, the Workers' Compensation Commission entered an order finding that claimant's psychiatric condition did not result from the November 7, 1986, meeting with the Nursing Home Administrator, Ms. Barbara Pepper, and that claimant failed to prove that she sustained an accidental injury as contemplated by Miss. Code Ann. § 71-3-3(b) (Supp. 1987). Further, the Mississippi Workers' Compensation Commission found that claimant's disability was not due to any injury arising out of and in the course of her employment with the Countrybrook Living Center, but was attributable to a psychoneurotic condition or emotional disturbance due to causes other than her employment by the Countrybrook Living Center.
A mental injury, unaccompanied by physical trauma, must be shown to have been caused by something more than the ordinary incidents of employment. Fought v. Stuart C. Irby Co., 523 So.2d 314 (Miss. 1988); Brown & Root Const. Co. v. Duckworth, 475 So.2d 813 (Miss. 1985); Smith and Sanders, Inc. v. Peery, 473 So.2d 423 (Miss. 1985); V. Dunn, Mississippi Workmen's Compensation Commission, § 114 (Supp. 1990).
On November 7, 1986, all nurses were required to attend the in-service meeting and each nurse, including claimant, was questioned by Ms. Pepper on an individual basis. The personal interview with nurses followed after the general meeting of all nursing personnel. The Commission found that this type management policy is reasonable, necessary and accepted for a public health facility to exercise in light of the difficulty experienced at Countrybrook Living Center. Management had the right, as well as the responsibility and duty, to investigate and discuss with nursing personnel the serious incidents of removal of nasogastric *1249 tubes and gastrostomy tubes from patients, wrongful mixing of medication cards, as well as the sabotage of medication buggies.
In Fought v. Stuart C. Irby, Co., 523 So.2d 314 (Miss. 1988), Fought sought benefits for disability resulting from mental or psychological injury when she was reprimanded at work after being called into the supervisor's office and told that the supervisor was not satisfied with her work initiative. She was also told that her absences were a problem. Fought claimed that she suffered a severe psychological reaction to this criticism. She described meetings with her supervisor as an attempt to intimidate her and contended that it was harassment to force her to resign. This Court held that, when a claimant seeks compensation benefits for disability resulting from a mental or psychological injury, the claimant has the burden of proving by clear and convincing evidence the connection between the employment and the injury and that the mental injury must have been caused by something more than the ordinary incidents of employment. Id. at 317. The Court stated that, "harassments" or stresses to which [the claimant] was subjected may reasonably have been regarded [as] nothing more than the ordinary incidents of employment, and not untoward events or unusual occurrences. Id. at 318. Benefits were denied.
In the case at bar, Dr. Robert Ritter indicated claimant had a 10-12 year history of personality disorders and that the cause of her illness was biochemical rather than work-related. Dr. Timothy Summers found claimant to have suffered psychological disorders for two years prior to November 7, 1987, and he released claimant to return to work without any restrictions. Dr. Alan Hearne, a clinical psychologist, although thinking claimant's illness was work-related, released her to return to work with the recommendation of a shift change which the employer granted. Dr. Maude Wright diagnosed claimant as having severe posttraumatic stress disorder and major depression with some psychotic symptoms. The Commission found that Dr. Wright's examination of claimant was performed on November 14, 1988, two years from the date of the nursing home confrontation and further found that Dr. Wright's testimony was unconvincing when compared to other medical experts who had examined and treated claimant.
We are of the opinion that claimant failed to show by clear and convincing evidence that her mental condition was causally connected to her employment; that the event occurring on November 7, 1986, was not an untoward event; and that the finding and order of the Workers' Compensation Commission is supported by substantial evidence. Therefore, the judgment of the lower court is affirmed.
AFFIRMED.
HAWKINS and DAN M. LEE, P.JJ., and PRATHER and PITTMAN, JJ., concur.
McRAE, J., dissents by separate written opinion joined by ROBERTSON, SULLIVAN and BANKS, JJ.
McRAE, Justice, dissenting:
I disagree with the majority's findings that the events of November 7, 1986, were not untoward and that Marcella Bates failed to meet her burden of proof in showing that the psychological injury she suffered was causally linked to her employment at the Countrybrook Living Center. Moreover, I find no statutory basis for the heightened standard of "clear and convincing evidence" that we have imposed upon claimants suffering mental injury in the course of employment. Accordingly, I dissent.

I.
When reviewing workers' compensation claims, "[i]f the Commission's findings of fact and order are supported by substantial evidence, all appellate courts are bound thereby." Fought v. Stuart C. Irby Co., 523 So.2d 314, 317 (Miss. 1988). Miss. Code Ann. § 71-3-3(b) (1972 and Supp. 1991) defines "injury" as an accidental injury which results from "an untoward event or events, if contributed to or aggravated or accelerated by the employment in a significant *1250 manner." The statute explains that "[u]ntoward event includes events causing unexpected results." Further, to be compensable, mental injuries unaccompanied by physical trauma must have been caused by something more than the ordinary incidents of employment. Fought, 523 So.2d at 317. For example, when an employer repeatedly promised an employee a promotion but then reneged on that promise, this Court found that it was an extraordinary event and unlikely to recur. Brown & Root Const. Co. v. Duckworth, 475 So.2d 813 (Miss. 1985). However, when an employee sought compensation for psychological trauma after her employer told her merely that "he was not satisfied with [her] lack of initiative, that [her] absences were a real problem ...", this Court commented that such an incident was an ordinary incident and not an untoward event. Fought, 523 So.2d at 318.
The interrogation to which Marcella Bates was subjected on November 7, 1986, can hardly be described as an ordinary or routine event. She was singled out and accused of acts that could be life-threatening to the patients and carry criminal penalties. Such accusations would be particularly troubling to a nurse whose paramount concern is the well-being of her patients. Moreover, while all of the nurses were subjected to the private interview after the otherwise routine group meeting, Bates, alone among her co-workers, was confronted with "proof" that she was the guilty party. Under these facts, contrary to the findings of the Commission and the majority, I believe that there is substantial support for her claim that the events which precipitated her injury were indeed "unusual" and "untoward."

II.
I find even more tenuous the Commission's conclusion that Bates failed to prove by clear and convincing evidence that her disability resulted from her employment. See Miss. Code Ann. § 71-3-3(b) (1972 and Supp. 1991). Four doctors from whom Bates had sought psychological counseling testified at the hearings. The Commission specifically disregarded Dr. Wright's conclusion that the injury was work-related. Dr. Hearne concluded that there was some causal connection between the incident and Bates' problems, but the Commission made only passing reference to her conclusions. It focused instead on the evaluations made by Drs. Ritter and Summers. Dr. Ritter testified that Bates had a long history of mental illness. Also, Dr. Summers' report stated, in two places, that Bates had experienced emotional problems for two years prior to his examinations, or sometime in 1985, before the incident occurred. Significantly, Dr. Summers testified that his office notes stated that Bates had been in good health until the November, 1986 incident, and that he must have carelessly made the "two year" reference. Apparently the Commission believed his reports rather than his testimony.
A claimant seeking compensation for a disability stemming from a mental or psychological injury bears the burden of proving the causal link between his employment and his injury by clear and convincing evidence. Smith & Sanders v. Peery, 473 So.2d 423, 425 (Miss. 1985). Generally, a claimant need only prove his case by a preponderance of the evidence. Dunn, Mississippi Workmen's Compensation Practice § 267. Miss. Code Ann. § 71-3-3(b) does not distinguish between physical and mental injury and the legislature has not otherwise mandated a heightened burden of proof for mental injury cases.
We have held that because of the beneficent purposes of the Workers' Compensation Act, the statutes are to be construed liberally and where there is an even question, we are to find in favor of the injured worker. Metal Trims Industries, Inc. v. Stovall, 562 So.2d 1293, 1297 (Miss. 1990).
Intentional torts of an employer and employee are not covered under the Workers' Compensation Act. See Wells v. Royal Oil Co., Inc., 500 So.2d 439 (Miss. 1986); Miller v. McRae's, Inc., 444 So.2d 368 (Miss. 1984); Miller Transporters v. Reeves, 195 So.2d 95 (Miss. 1967). The employer should not be allowed to hide under the umbrella of immunity when committing intentional or *1251 grossly negligent acts. Intentional tort cases, which are tried before a jury, require that the proof be established by a preponderance of the evidence. In workers' compensation cases, which are not tried by a jury, the burden is higher. Why?
The majority's adherence to the clear and convincing evidence standard for emotional injuries is without statutory basis and contrary to the beneficent purposes of the statute. It places a higher burden of proof on the claimant than is required in other worker's compensation cases or for those brought on an intentional tort theory. In so doing, the claimant who is emotionally injured in the workplace is effectively denied the right to seek redress for the wrong he has suffered. I would, therefore, find that our decision in Fought v. Stuart C. Irby Company, 523 So.2d 314, 317 (Miss. 1988), as well as its antecedents, Smith & Sanders, Inc. v. Peery, 473 So.2d 423 (Miss. 1985) and Miller Transporters v. Reeves, 195 So.2d 95 (Miss. 1967), should be overruled to the extent that they require the claimant to prove by clear and convincing evidence that his disability resulted from psychological injuries causally related to his employment. Accordingly, I dissent.
ROBERTSON, SULLIVAN and BANKS, JJ., join this opinion.
NOTES
[1] A total of eighteen tubes were pulled. Claimant had either been on duty or had just left or come on shift when they were discovered. She was the only nurse present at all the times these incidents took place.